**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

HENRY CHRISTOPHER GONZALES,

        Plaintiff,

v.                                   No. CV 18-1208 CG

ANDREW SAUL,
Commissioner of the
Social Security Administration,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** is before the Court on Plaintiff Henry Christopher Gonzales'

*Motion to Reverse and Remand to Agency for Rehearing, with Supporting*

*Memorandum* (the "Motion"), (Doc. 17), filed June 18, 2019; Defendant Commissioner

Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the*

*Agency's Administrative Decision* (the "Response"), (Doc. 21), filed September 18,

2019; and Mr. Gonzales' *Reply in Suport of Motion to Remand* (the "Reply"), (Doc. 22),

filed October 2, 2019.

Mr. Gonzales filed an application for disability insurance benefits on October 21,

2015, and for supplemental security income on June 19, 2017. (Administrative Record

"AR" 156, 170). Mr. Gonzales' claim for supplemental security income was

subsequently approved and, as a result, the only issue presently before the Court is his

application for disability insurance benefits. (AR 29-30). In his application for disability

insurance benefits, Mr. Gonzales alleged disability beginning August 3, 2013. (AR 156).

Mr. Gonzales claimed he was limited in his ability to work due to a hernia, torn tissue in

his right knee, and high blood pressure. (AR 195).

Mr. Gonzales' application was denied initially on March 2, 2016, and upon reconsideration on August 9, 2016. (AR 87, 94). At Mr. Gonzales' request, (AR 100), a hearing was held on August 11, 2017, before Administrative Law Judge ("ALJ") Cole Gerstner, (AR 27). Mr. Gonzales and Nicole B. King, an impartial vocational expert ("VE"), testified at the hearing and Mr. Gonzales was represented by his attorney, Gary Martone. (AR 27). On February 12, 2018, the ALJ issued his decision, finding Mr. Gonzales not disabled at any time between his alleged onset date, August 3, 2013, through December 31, 2015, the date he was last insured. (AR 22). Mr. Gonzales requested review by the Appeals Council, (AR 152), which was denied, (AR 1-3), making the ALJ's opinion the Commissioner's final decision for purposes of this appeal.

Mr. Gonzales, represented by attorney Feliz M. Martone, argues in his Motion that his residual functional capacity ("RFC") was incorrectly assessed because the ALJ: (1) did not properly evaluate Mr. Gonzales' subjective complaints and testimony, (Doc. 17 at 7-8); (2) erroneously concluded that Mr. Gonzales' statements were not supported by evidence in the record and failed to adequately explain his conclusions, *id.* at 8-11; and (3) did not properly evaluate Mr. Gonzales' severe impairment of obesity, *id.* at 11-14. The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ erred in not properly considering Mr. Gonzales' severe impairment of obesity, the Court finds that Mr. Gonzales' Motion should be **GRANTED IN PART** and this case **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

## I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) (2015), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) he is not engaged in "substantial gainful activity;" (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) he is unable to perform

---

1.    20 C.F.R. pt. 404, subpt. P, app. 1.

4

his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in his past relevant work, the ALJ will proceed to step five of the evaluation process. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.    Background

Mr. Gonzales claimed he was limited in his ability to work due to a hernia, torn tissue in his right knee, and high blood pressure. (AR 195). At step one, the ALJ determined that Mr. Gonzales has not engaged in substantial gainful activity since August 3, 2013, the alleged disability onset date. (AR 15). At step two, the ALJ found Mr. Gonzales has the following severe impairments: dysfunction of the right knee and obesity. (AR 15-16). At step three, the ALJ determined that none of Mr. Gonzales' impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (AR 16).

At step four, the ALJ found that Mr. Gonzales has the RFC to perform light work except that he can: lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently; sit, stand, and/or walk for six hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. (AR 17). In formulating Mr. Gonzales' RFC, the ALJ stated that he considered Mr. Gonzales' symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529 and Social Security Ruling ("SSR") 16-3p. (AR

17). The ALJ also stated that he considered opinion evidence consistent with the requirements of 20 C.F.R. § 404.1527. *Id.* The ALJ concluded that some of Mr. Gonzales' impairments could be expected to cause his alleged symptoms, but he found that the intensity, persistence, and limiting effects Mr. Gonzales described were not entirely consistent with the evidence in the record. (AR 18).

In evaluating the medical evidence in the record, the ALJ stated that he gave "some weight" to the opinions of non-examining state agency experts Teresa Fox, M.D. and Robert Weisberg, M.D. (AR 20). The ALJ explained that the opinions proffered by the non-examining state agency physicians were generally supported by the record except for their conclusion that Mr. Gonzales could perform "frequent postural maneuvers." *Id.* In addition, the ALJ assigned "little weight" to the opinion of James H. Lubowitz, M.D., a private physician that repeatedly treated Mr. Gonzales at the Taos Orthopedic Institute, PC. (AR 261-71).

After examining Mr. Gonzales' medical reports and his testimony at the hearing, the ALJ found that Mr. Gonzales is unable to perform any of his past relevant work and proceeded to step five of the SEP. (AR 20). At this step, the ALJ noted that Mr. Gonzales was 52 years old on the alleged disability onset date and was therefore classified as an individual "closely approaching advanced age." (AR 21). The ALJ also determined that Mr. Gonzales has at least a high school education and is able to communicate in English. *Id.*

Further, the ALJ explained that if Mr. Gonzales had the RFC to perform the full range of light work, a finding of not disabled would be directed by Medical-Vocational Rule 202.15. (AR 21-22). However, the ALJ found that Mr. Gonzales' limitations

impeded his ability to perform the full range of light work. *Id.* The ALJ therefore relied on the testimony of the VE to determine applicable jobs Mr. Gonzales could perform in the national economy. (AR 21). The ALJ noted that the VE testified at the hearing that an individual with Mr. Gonzales' same age, education, work experience, and RFC could perform the jobs of pantry cook, short order cook, meal cook, assembler, finish inspector, and electronics assembler. *Id.* After finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ adopted the testimony of the VE and concluded that, because Mr. Gonzales is capable of performing work existing in significant numbers in the national economy, he is not disabled pursuant to 20 C.F.R. §§ 404.1520(g). (AR 22).

## IV. Analysis

Mr. Gonzales presents three arguments in his Motion before the Court. First, Mr. Gonzales contends the ALJ improperly evaluated his subjective complaints of pain and his self-prescribed symptoms outlined in his function report and further articulated at the hearing. (Doc. 17 at 7-8). Second, Mr. Gonzales alleges the ALJ erroneously concluded that his statements were inconsistent with the evidence and failed to link his findings to evidence in the record. *Id.* at 8-10; (Doc. 22 at 1). Finally, Mr. Gonzales argues the ALJ failed to properly evaluate his severe impairment of obesity and did not discuss the limitations caused by obesity in his decision. (Doc. 17 at 9-14).

In response, the Commissioner argues the ALJ's explanation that the objective medical evidence contradicted Mr. Gonzales' subjective complaints was legally sufficient. (Doc. 21 at 15-18). Next, the Commissioner summarizes the ALJ's reliance on different medical evidence that was used to support his finding that Mr. Gonzales is

not disabled. *Id.* at 12. The Commissioner then attempts to draw parallels between the ALJ's recitation of Mr. Gonzales' medical history and his conclusions supporting the RFC assessment. *Id.* Lastly, the Commissioner argues that after finding Mr. Gonzales' obesity was a severe impairment, the ALJ sufficiently considered his obesity and utilized Mr. Gonzales' medical history and treatment reports as evidence to support his conclusion. *Id.* at 13.

*A.  The ALJ's Consideration of Subjective Complaints*

Even if no treating physician diagnoses the claimant with disabling pain, the ALJ must still weigh non-medical objective and subjective testimony of pain alongside the medical evidence. *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995). This does not require a "formulaic expression" or a "formalistic factor-by-factor recitation" of the evidence. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001). Rather, the ALJ must "set[] forth the specific evidence he relies on in evaluating the claimant's credibility." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also White*, 287 F.3d at 909 (explaining that an ALJ must provide an "objectively reasonable explanation over mere intuition" when reaching a conclusion on a claimant's credibility).

In deciding whether the evidence supports a finding of disabling pain, the ALJ must consider: "(1) whether the Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Kepler*, 68 F.3d at 390 (quoting *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)). Indeed, after the ALJ determines that "objective medical evidence showed

that [the] claimant had a[n injury] producing pain, the ALJ was required to consider [the claimant's] assertions of severe pain and to decide whether he believed them." *Kepler*, 68 F.3d at 391 (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (internal quotations and brackets omitted)).

To determine the credibility of the claimant's testimony about pain, the ALJ should consider factors such as: "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Id.* (internal citations and quotations omitted). Consideration of these factors ensures that the ALJ's credibility findings are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* When the link between the evidence and credibility determination is missing, the court is left with only the ALJ's conclusion, and remand is required for the Commissioner to clarify his findings. *Id.* at 391-92 (citing *Luna*, 834 F.2d at 161).

Here, the ALJ first explained the framework under which he would analyze Mr. Gonzales' subjective complaints of his symptoms and limitations:

> In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting

effects of the claimant's symptoms to determine the extent to which they
limit the claimant's functional limitations. For this purpose, whenever
statements about the intensity, persistence, or functionally limiting effects
of pain or other symptoms are not substantiated by objective medical
evidence, I must consider other evidence in the record to determine if the
claimant's symptoms limit the ability to do work-related activities.

(AR 17). Next, the ALJ summarized the evidence that he relied on to conclude that Mr.

Gonzales had satisfied the first step in the "two-step process," i.e., that his impairments

could reasonably be expected to produce his pain and symptoms. *Id.* Specifically, the

ALJ recited the following evidentiary support:

> The claimant alleges that he has physical impairments that prevent him
> from performing basic work-related activities (Ex 4E; Hearing Testimony).
> He stated that he could not stand on his leg for a period of time due to his
> knee pain (Ex. 4E). The claimant stated that before his knee problems, he
> used to be very active but now his knee gets stiff and he has sharp pain
> (Ex. 4E).
>
> He stated that he has a hard time getting out of the tub, washing his hair,
> wiping himself, and putting on his pants and socks (Ex 4E; Hearing
> Testimony). He stated that he lives alone and washes the dishes, does the
> laundry, cooks, and waters the lawn (Ex 4E; Hearing Testimony). He
> stated he goes to church, the movies, his parent's ranch, and the river (Ex.
> 4E). The claimant stated that he takes care of his dog (Ex. 4E). He stated
> that he goes to the store at least once a week by himself (Ex. 4E). The
> claimant stated he can drive but he has problems with the pedals due to
> his knee pain (Ex. 4E). The claimant stated that he could not stand in the
> same position for too long due to his knee pain (Ex. 4E). He stated that his
> pain affects his ability to lift, squat, bend, stand, reach, walk, sit, knee, and
> climb stairs (Ex. 4E). He stated he uses crutches, a cane, and a
> brace/splint (Ex 4E; Hearing Testimony).

After the ALJ determined that Mr. Gonzales had established a "pain-producing

impairment," he continued to determine whether his "statements concerning the

intensity, persistence, and limiting effects of these symptoms" supported a conclusion

that his impairments caused disabling pain. (AR 18). At this juncture, the ALJ again

cited extensively from Mr. Gonzales' hearing testimony and function report, explaining

that the statements he made at the hearing were inconsistent with other testimony, medical records, and his prior behavior. *Id.* The ALJ then concluded that Mr. Gonzales' statements about his subjective symptoms were inconsistent with the other evidence provided. (AR 18).

In light of the factual analysis of Mr. Gonzales' symptoms, the Court disagrees with Mr. Gonzales' contention that the ALJ "ignored a majority of [his] testimony at the hearing, and the statements he provided in the function report." *See* (Doc. 17 at 8). Indeed, the entire "step-one" analysis the ALJ conducted included a dozen direct citations from the hearing transcript and the function report, i.e., "Exhibit 4E." *See* (AR 17-18). The ALJ's recitation of the law, followed by his summary of the facts he relies on in rendering his conclusion about Mr. Gonzales' subjective complaints, permits the Court to follow his reasoning and understand the "specific evidence" he uses to support his conclusion. *See Keyes-Zachary*, 695 F.3d at 1167; *see also White*, 287 F.3d at 909.

The Court agrees with Mr. Gonzales that the ALJ did not explicitly state "I find this statement credible" for each assertion made by him at the hearing or in his function report. However, the ALJ "listed many of [his] specific factual assertions, often following them by a qualifying statement to indicate where he believed [his] testimony was contradicted or limited by other evidence in the record." *See Keyes-Zachary*, 695 F.3d at 1169-70. This approach "performed the essential function of a credibility analysis by indicating to what extent he credited what [he] said when determining the limiting effect of [his] symptoms." *Id.* at 1170 (citing *Luna*, 834 F.2d at 165-66). Further, "this approach also supports his ultimate conclusion that [Mr. Gonzales'] statements concerning [his]

symptoms' intensity, persistence, and limiting effects were not fully credible to the extent that they were inconsistent with his RFC assessment." *Id.*

More specifically, the ALJ directly addressed several of the *Luna* factors when making his determination about credibility. Indeed, the ALJ cited evidence regarding: the levels of medication and their effectiveness, (explaining "[t]he claimant testified that he was taking Percocet and ibuprofen for his pain. However, he testified that he is supposed to take Percocet four (4) times a day but he only takes it twice a day and he does not take it every day, which suggests that his impairments are not as severe as alleged."); the extensiveness of the attempts to obtain medical relief and the frequency of medical contacts, ("[Mr. Gonzales'] also testified that the surgery nor physical therapy helped; however, he missed two (2) weeks of physical therapy."); the nature of daily activities, ("the claimant stated that his right knee pain affected his ability to sit but he testified that he sat in a car for a seven (7) hour road trip."); and the consistency or compatibility of nonmedical testimony with objective medical evidence, ("The claimant testified that he uses a crutch everyday due to his right knee pain. However, none of his doctor visits noted that the claimant was seen walking with a crutch."). (AR 18) (internal citations omitted). This analysis is sufficient to withstand judicial scrutiny.

Finally, Mr. Gonzales argues the ALJ's conclusion that his statements were inconsistent with the record was "not based on substantial evidence." (Doc. 17 at 8). Mr. Gonzales provides contrary evidence to combat each of the ALJ's "insufficient" conclusions. *Id.* For example, Mr. Gonzales contends that while the ALJ used the evidence that he sat for a seven-hour road trip against his conclusion that he suffered pain while remaining seated, the ALJ never asked him whether he took breaks or had

difficulty during the prolonged period of sitting. *Id.* In addition, Mr. Gonzales contends that merely because he does not take his narcotic pain medication as often as prescribed, the ALJ should not conclude that his impairments are not as severe as he alleges. (Doc. 17 at 9).

The Court is sympathetic to Mr. Gonzales' argument and agrees that other evidence may support a contrary finding. However, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation omitted). Indeed, the Court cannot "displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (internal citations and brackets omitted).

In sum, the Court finds the ALJ's credibility analysis and review of Mr. Gonzales' subjective complaints satisfied the legal requirements mandated by the Tenth Circuit Court of Appeals. In addition, the Court finds that while other evidence may support an adverse conclusion, substantial evidence supports the ALJ's conclusion and the Court will therefore not substitute its judgment for the Commissioner's. As such, the Court finds the ALJ did not commit reversible error in conducting his analysis of Mr. Gonzales' subjective complaints and symptoms.

   B.  *The ALJ's RFC Analysis*

Next, Mr. Gonzales argues that although the ALJ summarized the pertinent medical evidence, the evidence ultimately does not support the ALJ's final RFC assessment that he can perform light work. (Doc. 17 at 11); (Doc. 22 at 2). Mr.

Gonzales argues the ALJ "merely recite[d] the medical evidence and his RFC without providing a link between the two," leaving the Court with an "inability to determine whether the ALJ applied the correct legal standards." (Doc. 17 at 12). Importantly, Mr. Gonzales does not challenge the ALJ's weighing of any of the physicians' opinions. *See* (Doc. 22 at 2); (Doc. 17 at 11-12). Rather, Mr. Gonzales' argument pertains only to the ALJ's "inadequate discussion," and his failure to provide "sufficient reasoning" in support of his opinion. (Doc. 22 at 2).

It is well settled that "[t]he agency's failure to apply correct legal standards, or show us it has done so, is [] grounds for reversal." *Hamlin*, 365 F.3d at 1214 (citing *Winfrey*, 92 F.3d at 1019). Indeed, the reviewing court must be able to ascertain that the ALJ followed the "appropriate legal principles" in reaching his decision. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Absent a thorough and understandable explanation for his decision, the ALJ's opinion must be reversed and remanded for the Commissioner to provide further reasoning. *Id.*

One such legal standard the ALJ must follow is properly crafting a claimant's RFC assessment. Specifically, to survive judicial scrutiny, the RFC assessment must be "based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. In drafting the RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion." *Id.* Further, after analyzing the claimant's symptoms and impairments, the ALJ must also "assess his [] work-related abilities on a function-by-function basis." *Id.* However, the narrative discussion and function-by-function basis requirements "do[] not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation

14

assessed." *Oliva v. Colvin*, 2015 WL 5719645, at *10 (D. Colo. Sept. 30, 2015)

(unpublished) (internal citation omitted); *see also Powers v. Colvin*, 2016 WL 8231145,

at *1 (D.N.M. June 13, 2016) (unpublished); *Chapo v. Astrue*, 682 F.3d 1285, 1288

(10th Cir. 2012) ("There is no requirement in the regulations for a direct correspondence

between an RFC finding and a specific medical opinion on [a specific] functional

capacity…").

Rather, the concern underlying the requirement that the RFC include a function-

by-function assessment and a narrative discussion, "is that, without a function-by-

function analysis, an ALJ 'may . . . overlook limitations or restrictions that would narrow

the ranges and types of work an individual may be able to do.'" *Hendron v. Colvin*, 767

F.3d 951, 956 (10th Cir. 2014) (citing SSR 96-8p, 1996 WL 374184 at *4). In light of this

concern, lower courts have found that an ALJ has fulfilled his duty under SSR 96-8p

when his written opinion demonstrates that he considered evidence of the claimant's

limitations and adequately explained how the evidence in the record supports his RFC

assessment, allowing the court to conduct meaningful judicial review. *See Hendron*, 767

F.3d at 954; *Lopez v. Colvin*, 2013 WL 5201009, at *3 (D. Colo. Sept. 16, 2013)

(unpublished) (finding that the ALJ provided an adequate narrative discussion under

SSR 96-8p where the ALJ cited specific medical facts and opinions, and nonmedical

evidence in assessing the RFC); *Oliva*, 2015 WL 5719645, at *11 (holding that the

ALJ's narrative discussion of the evidence was sufficient where the ALJ identified

medical evidence and the subjective complaints relied upon in formulating the RFC).

In his analysis, the ALJ discussed several of the treatment records of Mr.

Gonzales' physicians. (AR 18-19). In addition, the ALJ discussed the opinion evidence

proffered by Dr. Fox and Dr. Weisberg, two non-examining state agency experts. (AR 20). Importantly, the ALJ noted that both Dr. Fox and Dr. Weisberg opined that Mr. Gonzales could perform "light work with frequent postural maneuvers." *Id.* The ALJ continued, explaining:

> The doctors' opinion concerning light work is support[ed] by the medical evidence record. The claimant had normal stability during an examination with Dr. Gossum (Ex. 1F/3). In addition, Dr. Gossum stated that a horizontal tear in the meniscus would not result in such a profound limitation in the claimant's range of motion (Ex. 1F/3). Furthermore, the claimant's right knee arthrography revealed that his right knee was normal, the joint spaces were within normal limits, and there was no acute of focal abnormality. (Ex. 3F/33). However, I find that the claimant can only do occasional instead of frequent postural maneuvers for the reason mentioned to support the light work opinion of Drs. Fox and Weisberg.

(AR 20). This analysis -- in conjunction with the ALJ's nearly four-page discussion of Dr. Lubowitz' opinion, Mr. Gonzales' prior medical history and treatment notes, and his subjective complaints presented at the hearing and in his function report -- is legally sufficient for the Court to understand why the ALJ assigned Mr. Gonzales the RFC of light work with occasional postural maneuvers.

In sum, the Court finds the ALJ's analysis is "specific and legitimate," and permits the Court to meaningfully review his reasoning. *See Chapo*, 682 F.3d at 1291. Indeed, the ALJ identified the medical evidence he relied on in making his RFC determination, explained his credibility findings, and weighed the medical opinions in the record. The ALJ's analysis was therefore sufficient to demonstrate how the evidence supports his RFC assessment pursuant to SSR 96-8p. *See Lopez*, 2013 WL 5201009, at *3 (finding the ALJ's decision adequate under SSR 96-8p where the ALJ cited to specific medical facts, medical opinions, and nonmedical evidence in determining the RFC, despite the fact that ALJ did not state specifically what evidence he relied upon in connection with

specific limitations); *see also Oliva*, 2015 WL 5719645, at *11. As such, the Court finds the ALJ did not err in assessing Mr. Gonzales' RFC.

### C. Severe Impairment of Obesity

Finally, Mr. Gonzales argues the ALJ "did not adequately explain how obesity affected the ability to sustain work activities, or whether the ALJ properly considered the combined effect of obesity with the knee impairment." (Doc. 17 at 14). Mr. Gonzales contends that after finding his obesity to be a severe impairment, the ALJ was required to discuss how that effected his RFC conclusions and how possible limitations caused by obesity factored into his decision. *Id.* In response, the Commissioner contends the ALJ considered all of the medical evidence in crafting his final RFC assessment, including the effect of Mr. Gonzales' obesity on his other severe impairments. (Doc. 21 at 14).

A claimant's obesity may be considered a "severe impairment" when, "alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p. An ALJ must consider "the combined effects of obesity with other impairments" which may cause greater limitations than would be found when considering each of the impairments separately. *DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) (unpublished) (citing SSR 02-1p). If an ALJ finds obesity to be a severe impairment, he cannot rely on the adoption of limitations suggested by doctors to demonstrate that he has considered obesity. *Id.* (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)). Rather, the ALJ must make explicit findings pertaining to the

functional effects of the claimant's obesity and how those limitations may affect his other impairments. *Id.*

Here, the ALJ found Mr. Gonzales' obesity to be a severe impairment. (AR 16-17). He was therefore required to discuss the functional effects of his obesity and the possible limitations arising therefrom. *See DeWitt*, 381 Fed. Appx. at 785-86. The ALJ twice mentioned that he considered Mr. Gonzales' obesity when drafting his RFC assessment. *See* (AR 17) ("because obesity is a medically determinable impairment, any resulting functional limitations have been considered in the residual functional capacity assessment"); (AR 19) ("[O]besity is considered a severe impairment, and the undersigned has considered it in evaluating the claimant's residual functional capacity."). From these statements, however, the Court is unable to ascertain how Mr. Gonzales' RFC was impacted by his obesity.

The ALJ's blanket statements that he considered Mr. Gonzales' obesity are untethered to any evidentiary support suggesting what impact obesity had on his RFC assessment. Put simply, the Court cannot ascertain the ALJ's logical reasoning, and how Mr. Gonzales' obesity factored into his opinion. Absent a meaningful explanation regarding Mr. Gonzales' severe impairment of obesity, the Court cannot adequately review the ALJ's opinion. *See Hamlin*, 365 F.3d at 1214. As such, the Court finds the ALJ erred in failing to explain how Mr. Gonzales' severe impairment of obesity impacted his RFC assessment.

## V.     Conclusion

For the foregoing reasons, the Court finds the ALJ erred in failing to explain how Mr. Gonzales' severe impairment of obesity factored into his final RFC assessment.

**IT IS THEREFORE ORDERED** that Mr. Gonzales' *Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum*, (Doc. 17), is **GRANTED IN PART** and this case is **REMANDED** for additional proceedings consistent with this opinion.

**IT IS SO ORDERED**.

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE